*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, GANNON, and FLINTOFT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Victor M. FERNANDEZ GONZALEZ**
Hospital Corpsman (E-3), U.S. Navy
*Appellant*

**No. 202400381**

_____

Decided: 16 July 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Eric A. Catto

Sentence adjudged 11 July 2024 by a special court-martial tried at Joint Base Pearl Harbor-Hickam, Hawaii, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1.

For Appellant:
*Lieutenant Commander Benjamin E. Doskocil, JAGC, USNR*

For Appellee:
*Lieutenant Commander Philip J. Corrigan, JAGC, USN*
*Commander John T. Cole, JAGC, USN*

Senior Judge KISOR delivered the opinion of the Court, in which Judge GANNON and Judge FLINTOFT joined.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

KISOR, Senior Judge:

Appellant was convicted, consistent with his plea, of one specification of wrongful broadcast of intimate images in violation of Article 117a of the Uniform Code of Military Justice (UCMJ).

Appellant raises two assignments of error (AOEs): (1) did the military judge abuse his discretion accepting Appellant's guilty plea to an Article 117a violation; and (2) were Appellant's trial defense counsel ineffective for failing to inform Appellant about his Commanding Officer's (CO) statements that Appellant's misconduct had a negligible impact on the command and its military mission.

## I. BACKGROUND

Following an argument with Hospitalman (HN) M.S. (Appellant's then-wife), Appellant sent three sexually explicit videos of her to her mother and five intimate images of her to her father.[1] The videos and intimate images were made with HN M.S.'s permission, but she did not authorize their distribution to anyone, let alone her parents. Appellant was subsequently charged with violations of Articles 117a (wrongful broadcast of intimate images) and 134 (indecent conduct).[2]

Pursuant to the plea agreement with the Office of Special Trial Counsel, Appellant agreed to plead guilty to violating Article 117a in return for a sentence with no confinement, no punitive discharge, and no fine. The military judge had sentencing discretion with respect to reduction, forfeiture of pay, and

---

[1] Pros. Ex. 1 at 1.

[2] Charge Sheet.

other lawful punishments. Additionally, as part of the plea agreement, Appellant entered into a stipulation of fact with the Government.

Appellant stipulated that he was aware that sending these images would cause emotional distress to HN M.S. explaining,

> I knew it would be upsetting and painful to send intimate and sexually explicit content of her to her parents . . . . I knew my actions were likely to negatively affect her daily life and her ability to perform her military duties. I knew my actions could have a negative impact on the military mission of [the command] and HN M.S. would not be able to focus on her duties due to the distress. I also knew that HN M.S. would likely come into contact with the sent explicit content and that it did in fact negatively affect her daily life and her ability to perform her military duties.[3]

During the guilty plea inquiry, the military judge discussed all definitions and elements of Article 117a. When discussing the military nexus, the following exchange ensued:

> Military Judge: So did your conduct, under the circumstances, have a reasonably direct and palpable connection to a military mission or military environment?
>
> Appellant: Yes, Your Honor.
>
> Military Judge: So how?
>
> Appellant: Your Honor, because we were both active duty . . . . we both ended up missing work the next day because of all of this . . . .
>
> Military Judge: Which is affecting kind of both of your abilities to do your job, your military job?
>
> Appellant: Yes, Your Honor, exactly.[4]

Ultimately, the military judge accepted Appellant's guilty pleas and sentenced him to be reduced to pay grade E-1.

On appeal, Appellant moved to attach a declaration and an administrative form, Suspect Command Case Disposition Input (SCCDI), in which trial counsel requested Appellant's CO to comment on Appellant's misconduct and the

---

[3] Pros. Ex. 1 at 2.

[4] R. at 39-40.

impact the misconduct had on either the command or the military mission. This Court granted the motion on 17 July 2025. In the SCCDI, Appellant's CO noted "the service member's alleged offenses have had zero impact to our command's morale, health, safety and welfare; and negligible impact towards good order and discipline."[5] Further, the CO assessed that "the service member's alleged offenses have had zero impact on our command's ability to accomplish the mission."[6] Appellant contends in his declaration that his trial defense counsel attorneys never showed him this form, and that he does not believe he would have pleaded guilty if they had.[7]

## II. DISCUSSION

### A. The Military Judge Did Not Abuse His Discretion When Accepting Appellant's Guilty Plea.

Appellant argues the military judge abused his discretion because "the record fails to establish any direct and palpable effect on a military mission or military environment." According to Appellant, there is, therefore, a substantial basis to question the guilty plea.[8] The Government, for its part, contends that the military judge did not abuse his discretion in accepting Appellant's guilty plea because both the providence inquiry and the stipulation of fact objectively support Appellant's guilt.[9]

#### *1. Applicable Law*

We review a military judge's decision to accept a guilty plea for an abuse of discretion.[10] An abuse of discretion occurs when there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding an appellant's guilty plea.[11] Under Rule for Courts-Martial (R.C.M.) 910(e), a military judge may not accept an accused's plea of guilty unless, after inquiry, he or she is satisfied that there is a factual

---

[5] Suspect Command Case Disposition Input Form, Mot. to Attach (Jul. 10, 2025). This Court granted the motion on 17 July 2025.

[6] Suspect Command Case Disposition Input Form, Mot. to Attach (Jul. 10, 2025).

[7] Appellant's Decl. at 2 (Jul. 10, 2025).

[8] Appellant's Brief at 12.

[9] Government's Answer at 13.

[10] *United States v. Riley*, 72 M.J. 115, 119 (C.A.A.F. 2013) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)).

[11] *Id.*

basis for the plea. A guilty plea must be upheld unless there is a "substantial basis" in law and fact for questioning the plea.[12]

As our superior court has explained, an appellant must not conflate the review of a guilty plea with the review of guilty findings following a contested trial:

> When an accused has pleaded guilty, we do not review the "evidence" for legal sufficiency for the simple reason that there is no evidence when there is no trial. Instead, when the accused pleads guilty, the military judge shall "mak[e] such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." R.C.M. 910(e). This Court's task on review, as explained above, is only to determine from any stipulated facts and the providence inquiry whether the military judge abused his or her discretion in complying with this rule. In so doing, we simply must determine whether Appellant's guilty plea has a substantial basis in law and fact.[13]

Thus, the military judge must ensure there is a basis in law and fact to support the plea to the offense charged.[14] A plea is provident so long as the appellant was convinced of, and was able to describe, all of the facts necessary to establish his or her guilt.[15]

### 2. Analysis

Appellant argues that the military judge abused his discretion because "the record fails to establish any direct and palpable effect on a military mission or military environment" and therefore, there is a substantial basis to question the plea.[16] We do not find this contention convincing, and we therefore disagree.

The record clearly shows that the military judge fully explained each element and defined applicable terms of Article 117a. The military judge stated,

---

[12] *United States v. Phillips*, 74 M.J. 20, 21 (C.A.A.F. 2015).

[13] *United States v. Hiser*, 82 M.J. 60, 65 (C.A.A.F. 2022).

[14] *United States v. Soto*, 69 M.J. 304, 307 (C.A.A.F. 2011) (citing *Inabinette*, 66 M.J. at 321-22) (citations omitted).

[15] *United States v. Murphy*, 74 M.J. 302, 308 (C.A.A.F. 2015) (cleaned up).

[16] Appellant's Brief at 12.

One, that on or about 27 June of 2023, at or hear Oahu, Hawaii, on divers occasions, you knowingly and wrongfully broadcasted intimate visual images and visual images of a sexually explicit conduct involving [HN] M.S.

Two, that HN M.S. was at least 18 years of age when the visual images were created;

Three, that HN M.S. is identifiable from the visual images and from information displayed in connection with visual images;

Four, that HN M.S. did not explicitly consent to the broadcast of the visual images;

Five, that you reasonably should have known that the visual images were made under circumstances in which HN M.S. retained a reasonable expectation of privacy regarding any broadcast of the visual images;

Six, that you reasonably should have known that the broadcast of the visual images was likely to cause harm, harassment, intimidation, emotional distress, or financial loss for HN M.S. and to harm substantially HN M.S. with respect to her reputation and personal relationships; and

Seven, that your conduct, under the circumstances, had a reasonably direct and palpable connection to a military mission or military environment.[17]

With respect to the last element, the Manual for Courts-Martial explains that "A reasonably direct and palpable connection to a military mission or military environment" means that:

the connection between the conduct and a military mission or military environment is contextually oriented and cannot be evidenced by conduct that is connected only in a remote or indirect sense. To constitute an offense under the UCMJ, the conduct must have a measurably divisive effect on unit or organi-

---

[17] R. at 28-29.

zation discipline, morale, or cohesion, or must be clearly detri-
mental to the authority or stature of or respect toward a Ser-
vicemember.[18]

Here, the providence inquiry established that the victim was an active duty
servicemember attached to the same command as Appellant. Appellant also
admitted that both he and HN M.S. missed work the next day because of his
actions.[19] We are satisfied that providence inquiry and the stipulation of fact
established that Appellant's misconduct had a reasonably direct and palpable
connection to the military environment.[20] We discern no basis to question the
providence of his plea.

## B. Trial Defense Counsel Were Not Ineffective.

In his post-trial declaration, Appellant contends that he does not believe he
would have pleaded guilty if he had been shown a copy of the CO's Suspect
Command Case Disposition Input form.[21] Appellant's argument is that it was
deficient performance by counsel not to show him the form, and he was preju-
diced because he would not have pleaded guilty if he had seen it.

The Government, for its part, contends that Appellant does not assert that
he was unaware of the contents of the form, only that he had not seen it.[22] The
Government further argues that, regardless if he had seen not it, in light of the
overwhelming evidence, it is inconceivable that Appellant would not have
pleaded guilty.[23]

### 1. Applicable Law

We review ineffective assistance of counsel claims de novo.[24] Under *Strick-
land v. Washington*, an appellant bears the burden of demonstrating that (a)
defense counsel's performance was deficient, and (b) this deficient performance
was prejudicial.[25] In reviewing a claim of ineffective assistance of counsel, a

---

[18] *Manual for Courts-Martial, United States* (2023 ed.) (*MCM* (2023)), pt. IV, para. 55(b)(c)(3) at IV-77.

[19] R. at 39.

[20] Additionally, R.C.M. 910(j) waives any factual review of this issue.

[21] Appellant's Decl. at 2 (Jul. 10, 2025).

[22] Government's Answer at 18.

[23] Government's Answer at 24.

[24] *United States v. Suarez*, 86 M.J. 65, 73 (C.A.A.F. 2025) (citing *United States v. Metz*, 84 M.J. 421, 428-29 (C.A.A.F. 2024)).

[25] 466 U.S. 668 (1984).

lineal application of the *Strickland* test is not required. To the contrary, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."[26]

"When an appellant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain."[27] Instead, the prejudice test for ineffective assistance of counsel in the guilty plea context is an objective test: whether there is a reasonable probability that, but for counsel's errors, an appellant would have pleaded not guilty.[28]

Further, standing alone, an appellant's post-trial assertions that he would not have pleaded guilty but for his attorney's deficiencies are not enough to establish prejudice. This Court must also look to contemporaneous evidence because an appellant has an incentive to assert that the result of the plea process would have been different.[29]

*2. Analysis*

Appellant argues that his trial defense counsel did not inform him about the statements his CO made in the SCCDI form before he decided to plead guilty in this case.[30] He argues that this failure to present and discuss the statements, "which directly undermined an element of the offense, amounted to a deficiency in the performance of their duties as his defense counsel."[31]

Regarding prejudice, Appellant admits in his Declaration, "I had multiple conversation with [my counsel] about the likelihood of success at trial and the evidence that the government would likely present against me at trial. Both of my defense counsels advised me that pleading guilty and negotiating favorable terms was my best option."

We do not find deficient performance here even if Appellant did not see the form prior to trial. Regarding prejudice, we observe that although Appellant

---

[26] *Strickland*, 466 U.S. at 697; s*ee also United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012) ("It is not necessary to decide the issue of deficient performance when it is apparent that the alleged deficiency has not caused prejudice.").

[27] *Suarez*, 86 M.J. at 73 (quoting *Lee v. United States*, 582 U.S. 357, 364 (2017)).

[28] *See United States v. Furth*, 81 M.J. 114, 117 (C.A.A.F. 2021) (quoting *Lee v. United States*, 582 U.S. at 363).

[29] *See Suarez*, 86 M.J. at 73 (citation omitted).

[30] Appellant's Brief at 13.

[31] Appellant's Brief at 13-14.

faced up to a year in confinement and a bad-conduct discharge at the special court-martial, Appellant's plea agreement precluded the military judge from adjudging either confinement or a punitive discharge.[32] We discern no reasonable probability that Appellant would not have pleaded guilty in the face of the evidence and the favorable terms of the plea agreement.

Defense counsel were not ineffective.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[33]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[32] Plea Agreement, App. Ex. V at 5.

[33] Articles 59 & 66, UCMJ.